**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA GAINESVILLE DIVISION**

**MATTHEW GILLIS,**

**Plaintiff,**

**vs. CASE NO. 5:08CV362-RH/AK**

**DR. GUZMAN, et al,**

**Defendants.**

**_____________________________/**

## REPORT AND RECOMMENDATION

Plaintiff brings this cause of action under 28 U.S.C. §1331 against federal officials alleging that they were deliberately indifferent to his serious medical needs. [1] (Doc. 8). Defendants moved to dismiss the complaint, (doc. 29), which has been converted to a motion for summary judgment, (doc. 32), and Plaintiff has responded. (Doc. 35).

## I. Allegations of the Amended Complaint (doc. 8)

Plaintiff claims that his ankle was broken on March 1, 2006, and did not heal correctly, and although this was noted by Dr. Guzman, he refused to take any corrective

[1] Although the motion is filed on behalf of Defendants Guzman and Hernandez, they appear only to contest personal jurisdiction asserting that they were never served. The docket sheet reflects that service was attempted upon them in the same manner as the other defendants and according to the Court's usual practice when serving defendants at the Bureau of Prisons. There is no explanation as to why service was not accepted by these two persons when the other named defendants at FCI Marianna accepted service.

action. He describes a conversation with Guzman on October 25, 2007, where the doctor allegedly told Plaintiff that the ankle should have been fixed earlier and referred to a blurry x-ray when discussing Plaintiff's back injury, but allegedly Dr. Guzman could not correctly identify where L-1 was on the x-ray. Plaintiff claims that Dr. Guzman refused him a new back brace.

Defendants Seay and Pelt purportedly agreed with Dr. Guzman and refused to fix Plaintiff's back and ankle despite Plaintiff's unspecified requests for medical help from them. On or about February 29, 2008, Defendant Seay took pictures of the back brace and where Plaintiff said it had cracked, and told Plaintiff that a new one would be made, but later informed Plaintiff that Dr. Guzman said he did not need a back brace and there was nothing wrong with his back, neck or ankle.

Helen Hernandez purportedly refused to order x-rays for him, stating that she could tell from looking at him that nothing was wrong, and she refused him a feather pillow for his neck and back, even though he had been issued one previously telling him falsely that there were none.

Defendant claims that he saw Defendant Gardner on March 25, 2008, who refused him pain medication "besides what I was already taken [sic]," and a few days later when examining him told him he no longer needed his brace or walking boot. She refused to respond to five additional staff forms regarding his back and ankle. Ms. Gardner also allegedly denied him his personal walker, knowing that he would be in severe pain without it, and then allowed his prescription for pain medications to expire.

Plaintiff claims that Mr. Horton (not a named defendant) tried to find him a new back brace, but could not find one on the internet, and tried to repair his walking boot, but was stopped by Defendant Pelt. Plaintiff filed a staff request to Mr. Horton about the back brace, but Defendant Gardner interfered and responded that an appointment would be set up for him, but when he appeared for the appointment she wrote for August 8, 2008, he was never seen by anyone.

Plaintiff seeks compensatory and punitive damages for the severe pain he suffered.

Exhibits A through D to the amended complaint reveal that Plaintiff made numerous and repeated requests for his back and ankle issues, **all of which include timely and appropriate responses**, and that x-rays were taken that showed old fractures of L1 and his ankle, with normal disc spacing, for which exercise was prescribed. In response to his request for a new back brace, he was told that a brace would further weaken his back and exercise would help.

Additional evidence is attached which includes the following:

a) Medical Report from FTC Oklahoma shows that he had a lower bunk pass, orthopedic shoes, wool allergy, lower tier pass, cane/crutches, and seizure precautions.

b) Inmate property sheet which is indecipherable.

c) Inmate Request dated November 16, 2006, requests refills on ibuprofen which he brought with him from Oklahoma. The response to the request indicates refills were given on 11/24/06 and 11/29/06 and he had a three months prescription written for him on 11/17/06.

d) Medical Report dated April 4, 2007, from FTC Oklahoma says "Back brace must wear," "(R) walking boot," and "low bunk low tier."

e) In response to complaints about back pain, the response dated October 4, 2007, was that he would be called when the x-ray reports were done.

f) Responses to his request for a medical pillow says there was nothing in his file to indicate a need for this and there were no feather pillows available. Nonetheless he was given an extra pillow on October 22, 2008.

g) Response dated October 9, 2007, says that the x-ray report showed a normal lumbar spine with an old fracture, as did the ankle x-ray.

## II. Standard of Review

A district court should grant summary judgment when, "after an adequate time for discovery, a party fails to make a showing sufficient to establish the existence of an essential element of that party's case." Nolen v. Boca Raton Community Hospital, Inc., 373 F.3d 1151, 1154 (11th Cr. 2004), *citing* Celotex Corporation v. Catrett, 477 U.S. 317, 322 (1986). All issues of material fact should be resolved in favor of the Plaintiff or non-moving party before the Court determines the legal question of whether the defendant is entitled to judgment as a matter of law under that version of the facts. Durruthy v. Pastor, 351 F.3d 1080, 1084 (11th Cir. 2003); Skrtich v. Thornton, 280 F.3d 1295, 1299 (11th Cir. 2002). The Plaintiff has the burden to come forward with evidentiary material demonstrating a genuine issue of fact for trial. Celotex, 477 U.S. at 322-23. Plaintiff must show more than the existence of a "metaphysical doubt" regarding the material facts, Matsushita Electric Industrial Co., LTD. v. Zenith Radio Corporation, 475 U.S.

574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986), and a "scintilla" of evidence is insufficient. There must be such evidence that a jury could reasonably return a verdict for the party bearing the burden of proof. Anderson v. Liberty Lobby, 477 U.S. 242, 251, 106 S. Ct. 2505, 2512, 91 L. Ed. 2d 202 (1986). “For factual issues to be considered genuine, they must have a real basis in the record.” Mize v. Jefferson City Board of Education, 93 F.3d 739, 742 (11th Cir. 1996).

"Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by his own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " Owen v. Wille, 117 F.3d 1235, 1236 (11th Cir. 1997), *cert. denied* 522 U.S. 1126 (1998), *quoting* Celotex, 477 U.S. at 324, 106 S. Ct. at 2553 (quoting Fed. R. Civ. P. 56(c), (e)). The nonmoving party need not produce evidence in a form that would be admissible as Rule 56(e) permits opposition to a summary judgment motion by any of the kinds of evidentiary materials listed in Rule 56(c). Owen v. Wille, 117 F.3d at 1236; Celotex, 477 U.S. at 324, 106 S. Ct. at 2553.

While a moving party is not required to support his motion for summary judgment with affidavits, Celotex, supra at 323, the facts stated in uncontradicted affidavits or other evidentiary materials must be accepted as true for purposes of summary judgment. Gauck v. Meleski, 346 F.2d 433, 436 (5th Cir. 1965).

## III. Defendants Relevant Evidence (doc. 30)

### a) Affidavit of Dr. Alfredo Guzman

Dr. Guzman is the Clinical Director at the Federal Correctional Institution at Marianna, Florida, and he has reviewed the medical records of Plaintiff. He has also been actively involved in Plaintiff's treatment during his incarceration there from November 8, 2006, through March 21, 2007, and from April 25, 2007, through September 17, 2008. He describes Plaintiff's prior medical history as involving an accident with an 18-wheeler on October 12, 2005, that resulted in a fracture to L1 and his ankle. He was also shot in an escape attempt on March 2, 2006, and the bullet remained in his vertebrae. These things occurred prior to his incarceration at FCI Marianna, and Dr. Guzman explained that the window of opportunity to repair the ankle fracture was closed and that breaking his ankle and resetting it would not work. An x-ray showed the old fracture, but was otherwise normal, and it was Dr. Guzman's plan to continue him on pain medication and see him regularly for follow-up.

Dr. Guzman also reviewed the lumbar spine x-rays taken on October 4, 2007, and determined that no back brace was necessary and that Plaintiff should instead strengthen his back with exercise. Thus, he denied Plaintiff's request to have the brace repaired.

Dr. Guzman attests that every medical request from Plaintiff was evaluated and responded to appropriately. He also attests that Plaintiff's own actions have contributed to his continuing back pain.

## IV. Plaintiff's response

Plaintiff contends that Dr. Guzman is incompetent and his statements are fabricated as evidenced by his representation that Plaintiff injured his back and ankle at the same time. Plaintiff contends that he broke his back in the 18 wheeler accident, but his ankle was broken during the escape attempt. He also contends that because he received a new back brace when he was transferred to USP Atlanta, in July 2009, this proves that the medical staff at Marianna was incompetent and indifferent to his medical needs.

## V. Analysis[2]

Deliberate indifference to the serious medical needs of prisoners violates the Eighth Amendment's prohibition of cruel and unusual punishment. Estelle v. Gamble, 429 U.S. 97, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976). The concept of deliberate indifference must be more than negligence, but is satisfied by something less than actions undertaken with an intent to cause harm. Farmer v. Brennan, 511 U.S. 1216, 114 S. Ct. 1970, 1978, 128 L. Ed. 2d 811 (1994). Subjective recklessness, as defined in criminal law, is the standard which must be shown for an official's actions to rise to the level of deliberate indifference. *Id*. Combining the standards from Farmer and

---

[2] Suits under §1983 and Bivens are very similar. Abella v. Rubino, 65 F.3d 1063 (11th Cir. 1995). A § 1983 suit challenges the constitutionality of the actions of state officials; a Bivens suit challenges the constitutionality of the actions of federal officials. See Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971). "The effect of Bivens was, in essence, to create a remedy against federal officers, acting under color of federal law, that was analogous to the section 1983 action against state officials." Dean v. Gladney, 621 F.2d 1331, 1336 (5th Cir.1980), *cert. denied,* 450 U.S. 983, 101 S.Ct. 1521, 67 L.Ed.2d 819 (1981). Thus, courts generally apply §1983 law to Bivens cases. *E.g.*, Butz v. Economou, 438 U.S. 478, 500, 98 S.Ct. 2894, 2907, 57 L.Ed.2d 895 (1978).

Estelle, the Eleventh Circuit has clarified that, ultimately, there are four requirements to bringing an Eighth Amendment claim for the denial of medical care: an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need, and an actual inference of required action from those facts." Taylor v. Adams, 221 F.3d 1254 (11th Cir. 2000).

The evidence attached to the amended complaint, fully supported by Dr. Guzman's affidavit, shows that Plaintiff made numerous complaints to medical staff at Marianna, and while he disagreed with the assessments they made, assessments were made in response to every request. It is not determinative of Plaintiff's claim, repeatedly referred to as "incompetence," that the medical staff at USP Atlanta (or Oklahoma) made a different decision about appropriate treatment for his medical condition. A purely medical judgment "that in hindsight...may have been poor or even that may have constituted negligence or medical malpractice does not elevate Plaintiff's claim to a tort of constitutional dimensions." Pate v. Peel, 256 F. Supp.2d 1326, 1327 (N.D. Fla. 2003), citing Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991) (differences in opinion between medical staff and inmate do not state Eighth Amendment claim).

Plaintiff also complains that several defendants refused him a new back brace, special pillows, and a walker (Defendants Seay, Pelt, Gardner), but it was Dr. Guzman, the Clinical Director, who made the decisions that these special items were unnecessary. Plaintiff does not allege nor does he provide evidentiary support to show that these persons had the authority or responsibility to make the decisions of which he complains.

In light of the foregoing, it is respectfully **RECOMMENDED** that Defendants' Motion to Dismiss, construed as a motion for summary judgment (doc. 29) be **GRANTED**, and this cause be **DISMISSED** for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2).

**IN CHAMBERS** at Gainesville, Florida, this 28th Day of December, 2009.

s/ A Kornblum
**ALLAN KORNBLUM**
**UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**